IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DYLAN M. K.,[1]

        **Plaintiff,**

v.                                        Case No. 2:22-cv-489

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Dylan M. K. seeks judicial review of the Commissioner of Social Security's denial of his claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("the Act"). Specifically, Plaintiff argues that the Commissioner's Administrative Law Judge ("ALJ") failed to include limits on pace in his residual function capacity ("RFC") despite finding moderate impairment in concentrating, persisting, or maintaining pace ("CPP") and provided no explanation for this exclusion. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes that the ALJ based her moderate CPP rating on limitations that she found in concentrating and persisting, not pace, and that the ALJ sufficiently explained the basis for Plaintiff's RFC. This Report therefore recommends that the court deny Plaintiff's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.     **Procedural Background**

Plaintiff applied for DIB and SSI under Title II and Title XVI of the Act on September 13, 2019. (R. 15, 72). He alleged disability beginning April 1, 2016, based on Asperger syndrome, autism spectrum disorder, mood disorder, learning disability, depression, and anxiety. (R. 72). The state agency denied his application initially and on reconsideration. (R. 113, 118, 119, 124). Plaintiff then requested an administrative hearing, which was held remotely on April 6, 2022. (R. 15, 40). Plaintiff, Plaintiff's father, and Plaintiff's counsel attended the hearing, and an impartial vocational expert ("VE") testified. Id. On April 14, 2022, the ALJ denied Plaintiff's claims for DIB and SSI, finding that he was not disabled during the period alleged. (R. 15-33). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20-23). The ALJ also found that Plaintiff's RFC permitted him to perform work within the national economy. (R. 32-33). On October 14, 2022, the Appeals Council denied Plaintiff's request for review. (R. 1-3).

On November 23, 2022, Plaintiff filed his complaint in this court. Compl. (ECF No. 1). He seeks judicial review of the Commissioner's final decision that he was not entitled to an award of DIB or SSI, claiming that the decision "is not supported by substantial evidence under the standards set forth by . . . applicable laws and regulations . . . ." Id. ¶ 6 (ECF No. 1, at 2).

On March 9, 2023, Plaintiff moved for summary judgment and filed a supporting brief. Pl.'s Mot. Summ. J. (ECF No. 12); Pl.'s Br. Supp. Mot. Summ. J. ("Pl.'s Br.") (ECF No. 13). Plaintiff argues that the case should be reversed or remanded because "the ALJ found '*moderate*' impairment in CPP but included no limits on pace in the RFC." Pl.'s Br. (ECF No. 13, at 8). Plaintiff contends that the ALJ did not provide an explanation for this exclusion. Id.

On April 10, 2023, the Commissioner opposed Plaintiff's motion. Def.'s Br. Supp. Decision Den. Disability Benefit & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 15). The Commissioner argues that the ALJ's "finding of moderate limitations in the category [of CPP] does not mean that the ALJ found Plaintiff to have a moderate rating in each of the three components of that broad functional area." Id. at 15. The Commissioner adds that the ALJ "provided [an] explanation [for her decision] in conformity with Shinaberry and Mascio," and so this court "can meaningfully perform judicial review." Id. at 19, 23.

## II. Factual Background

Plaintiff was born on July 8, 1997, and at the time of the ALJ's decision, he was 24 years old. (R. 72); see (R. 33). For the purposes of his DIB claim, he met the insured status requirements under the Act until December 31, 2018. (R. 87). He has not engaged in substantial gainful activity since April 1, 2016, the alleged onset date. (R. 18). He completed high school but received a special education diploma. (R. 32). He reported previous work in landscaping from July 2015 through July 2016 and at a fast-food restaurant from January 2018 through March 2018.[2] (R. 298-300).

Plaintiff's arguments in this court do not require a complete review of his medical history or the hearing, as he only disputes the ALJ's construction of the RFC with respect to the moderate CPP limits recited in the Step 3 finding. Accordingly, the discussion below recites the medical findings of record which are relevant to that analysis.

### A. Plaintiff's Health Treatment

Plaintiff's relevant medical history begins on July 3, 2016, when he was voluntarily admitted to the Virginia Beach Psychiatric Center for treatment after an altercation with his

---

[2] The earnings from these jobs did not rise to the level of substantial gainful employment. (R. 18); see (R. 264-73).

3

father. (R. 388). On discharge, he was diagnosed with major depression, history of autistic spectrum disorder, and history of general anxiety disorder. (R. 391). Plaintiff was prescribed Prozac and Klonopin, and it was recommended that he follow up with outpatient psychiatric and therapy. Id.

On October 18, 2016, Plaintiff underwent a three-day comprehensive vocational evaluation at Wilson Workforce and Rehabilitation Center ("Wilson Center"). (R. 418). In its report, the Wilson Center voiced concern over Plaintiff's ability to keep "pace with workplace and training demands," the improvement needed in his attention to detail, and the ease with which he could be "distracted by social stimuli," noting that "[h]is work speed on some assignments was below expectations." (R. 420, 422). Nonetheless, the report opined that Plaintiff "had good work energy and good work tolerance." (R. 422).

On May 30, 2019, Plaintiff attended a counseling session with Chesapeake Psychological Associates. (R. 478). It was Plaintiff's first treatment since his 2016 admittance to the Virginia Beach Psychiatric Center. (R. 481). On May 31, 2019, Dr. Mark Witherspoon, Psy.D., produced a psychological evaluation report based off three examinations of Plaintiff. Id. In an interview, Plaintiff told Dr. Witherspoon that he did not receive or take medication. (R. 482). Dr. Witherspoon found that Plaintiff showed some indication of issues related to inattentiveness and vigilance, but no indication of problems with sustained attention. (R. 483).

On July 11, 2019, Plaintiff was voluntarily admitted to the Virginia Beach Psychiatric Center for a second time, complaining of auditory hallucinations and suicidal ideation. (R. 435). Plaintiff was prescribed Seroquel and Prozac, and upon showing improvement, he was discharged. (R. 437). On July 29, 2019, Plaintiff followed up with Chesapeake Psychological Associates for outpatient medication management, where he reported his stable condition,

adherence to his medication, and no side effects. (R. 460). Upon examination, his attention was recorded as intact. (R. 463). The attending provider continued Plaintiff on his medication regimen and psychotherapy focus. (R. 466). On September 3, 2019, Plaintiff followed up with Chesapeake Psychological Associates again, reporting stable symptoms on his medication and denying side effects. (R. 453). An examination found his attention and concentration intact. (R. 455). Plaintiff missed two October appointments with Chesapeake Psychological Associates and did not seek treatment again until January 29, 2021, when he attended an appointment with Chesapeake IBH, where he displayed no evidence of an attention impairment and his concentration appeared intact. (R. 596, 602). These findings were repeated in further appointments with Chesapeake IBH through August 2021. (R. 544, 554, 560, 569, 582, 593).

1. **Agency Findings**

On October 2, 2020, state agency consultative examiner Dr. Randy Rhoad, Psy.D., evaluated Plaintiff. (R. 501). Dr. Rhoad diagnosed Plaintiff with attention deficit hyperactivity disorder, unspecified anxiety disorder, and unspecified personality disorder. (R. 503). He noted that Plaintiff displayed "indications of a level of inattention and lack of focus" and cited Dr. Witherspoon's findings. Id. Dr. Rhoad opined that Plaintiff "appear[ed] capable of performing some level of repetitive and simple work assignments" but that he "likely will experience a moderate degree of difficulty completing tasks throughout a typical work day and work week and to continue in regular basis." (R. 504).

On October 5, 2020, state agency psychologist Dr. Richard Luck, Ph.D., evaluated Plaintiff and found him moderately limited in CPP. (R. 80). Dr. Luck found that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerance. (R. 82). However, Dr. Luck found Plaintiff moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 82-83). Dr. Luck opined that Plaintiff could maintain concentration, persistence, and pace on tasks with one-to-two-step instructions. (R. 83). Dr. Luck concluded that Plaintiff "can sustain performance of simple, routine tasks over a normal workday/workweek in settings with minimal social demands." (R. 84).

On May 17, 2021, state agency psychologist Dr. Stephen Saxby, Ph.D., evaluated Plaintiff and found him moderately limited in CPP. (R. 108). Dr. Saxby found that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision. (R. 111). However, Dr. Saxby found Plaintiff moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. Like Dr. Luck, Dr. Saxby concluded that Plaintiff "would be able to perform tasks with simple 1-2 step instructions." Id.

**B.    Testimony Before the ALJ**

At the ALJ's hearing on April 6, 2022, the ALJ heard testimony from Plaintiff and Plaintiff's father, and then examined the VE. (R. 40-71). Plaintiff testified that he left his previous jobs due to "[t]oo much anxiety," his asking too many questions, and employer dissatisfaction with his work. (R. 50). He testified that since his alleged onset date, he has

6

engaged in various activities, including fishing, drawing, working on his computer, playing videogames, and making YouTube videos. (R. 53-54). Plaintiff also testified that he could not work any job full-time due to anxiety, slow pace, an inability to multitask, and distractions. (R. 55).

Plaintiff's father then testified as a witness. (R. 55). He opined that Plaintiff could not focus or multitask, and blamed anxiety, depression, and low self-esteem. (R. 56). He also claimed that Plaintiff's condition had not improved since Plaintiff began taking medications consistently. (R. 56-57). Plaintiff's father testified that Plaintiff was fired from his landscaping job because he could not keep up with the work and could not drive, and that he ended his position as a dishwasher because of his anxiety and the fast pace. (R. 57). He testified that Plaintiff needs reminders to take care of his personal needs and do household chores, such as doing laundry, doing the dishes, taking out the trash, and mowing the grass. (R. 58-60). Plaintiff's father explained that Plaintiff lived with him, and opined that if Plaintiff lived independently, he could not manage his own finances, do chores, or get up to go to work, as "he does things at his pace." (R. 56, 61).

The ALJ then proposed an RFC to the VE that included, among other things, a limitation to unskilled, simple, routine, repetitive work. (R. 66). The VE then testified that given those limitations, Plaintiff could work in the following occupations: night cleaner (DOT 323.687-014) with 192,000 jobs nationally, warehouse worker (DOT 922.687-058) with 78,000 jobs nationally, and hand packager (DOT 920.587-018) with 59,000 jobs nationally, among others. (R. 67). In a hypothetical where Plaintiff was limited to work that is goal-oriented, rather than production paced, the VE testified that she would remove the hand packager job from the list but could replace it with laundry worker (DOT 302.685-010) with 129,000 jobs nationally. Id. In a

7

separate hypothetical where Plaintiff was off task for more than 30% of the workday, the VE testified that Plaintiff could not perform any work competitively. Id. The VE also testified that according to her experience, a claimant who is off task for more than 10% of the workday, excluding an hour's worth of breaks, would be unemployable. (R. 70).

### III. Standard of Review

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if

either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. Analysis

Plaintiff argues that because the ALJ "found '*moderate*' impairment in CPP, but included no limits on pace in the RFC" and did not explain why, this court should remand. Pl.'s Br. (ECF No. 13, at 8). The Commissioner argues that the ALJ's finding of a moderate limitation in CPP "*does not* mean that the ALJ found Plaintiff to have a moderate rating in each of the three components of that broad functional area" and that the ALJ adequately explained the basis for the RFC. Def.'s Opp'n (ECF No. 15, at 15, 23). As explained below, this Report finds that the ALJ did not find a moderate limitation specifically in pace and that the ALJ adequately explained the basis for the RFC limits imposed. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

### A. Framework for SSA Disability Evaluation

To file for and receive disability benefits under the Social Security Act, a claimant must (1) meet the insured status requirements of 42 U.S.C. § 423(c)(1), (2) be under the retirement age as defined in § 416 of the Act, and (3) possess a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in significant numbers in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

To determine disability, the SSA provides ALJs with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The analysis is as follows:

1. Is the claimant engaged in a substantial gainful activity?

2. Does the claimant have a medically determinable impairment or combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to perform basic work activities?

3. Does the claimant's impairment or combination of impairments meet or equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and meet the durational requirements?

4. Does the claimant's impairment or combination of impairments prevent him or her from performing any past relevant work ("PRW")?

5. Does the claimant's impairment or combination of impairments prevent him or her from performing any other substantial gainful work ("SGA")?

After the third question, the ALJ assesses the claimant's RFC, which the ALJ uses to answer questions four and five. Id. § 404.1520(e). If the answer to question one is yes, or the answer to questions two, four, or five is no, then the claimant is not disabled. If the answer to questions three or five is yes, then the claimant has established disability. A finding of disability or no disability at any question ends the analysis. The claimant bears the burden of proof for questions one through four, whereas the Commissioner bears the burden of proof for question five. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d

10

517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.     The ALJ Decision Currently Before the Court for Review**

At step one, the ALJ found that Plaintiff had not engaged in SGA from his alleged disability onset date of April 1, 2016, through the ALJ's decision of April 14, 2022. (R. 18).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments which significantly limit his ability to perform basic work activities from the alleged onset date to the date last insured: major depressive disorder, history of autism spectrum disorder, history of generalized anxiety disorder, and specific learning disorder. Id. The ALJ also found that, from the protective filing date through the date of her decision, Plaintiff suffered from those same impairments, as well as the following additional severe impairments: bipolar disorder, dysthymic disorder,[3] attention deficit hyperactivity disorder, cognitive impairment with frontal lobe and executive function deficit, attention and concentration deficit, social anxiety disorder, unspecified anxiety disorder, and unspecified personality disorder. Id.

At step three, the ALJ found that the severity of Plaintiff's impairments, individually or combined, did not meet or medically equal the severity of one of the listed impairments. (R. 20).

The ALJ then found that Plaintiff had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace (CPP); and (4) adapting or managing oneself. (R. 21-23). The ALJ used these findings to apply the following restrictions in Plaintiff's RFC:

---

[3] Dysthymic disorder is "a mood disorder characterized by depressed feeling" and may involve "altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness." Saunders, Dorland's Illustrated Medical Dictionary 556 (31st ed. 2007). Though symptoms persist "for more than two years," they "are not severe enough to meet the criteria for major depressive disorder." Id.

11

> [T]he claimant is limited to simple, routine, repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of two and that is low stress, defined as only occasional decision making required and only occasional changes in the work setting. The claimant is limited to occupations which require no more than occasional interaction with supervisors and coworkers and no interaction with members of the general public. The claimant is limited to occupations which require no prolonged reading for content and comprehension or complex mathematical calculations, such as cashier or teller work.

(R. 23).

At step four, the ALJ determined that Plaintiff had no PRW, as none of his work rose to the level of SGA. (R. 31-32).

At step five, the ALJ used the RFC to find that Plaintiff could perform work in the national economy. (R. 32-33). Thus, the ALJ determined that Plaintiff was not disabled. (R. 33).

### C.     The ALJ provided an adequate RFC and explanation.

Plaintiff argues that the ALJ erred in crafting the RFC. Pl.'s Br. (ECF No. 13, at 7). Specifically, Plaintiff contends that the ALJ concluded he had a moderate impairment in concentrating, persisting, and maintaining pace, but failed to include a limit on pace in the RFC. Id. at 8. The RFC limitation to "simple, routine, repetitive, or unskilled" tasks, Plaintiff contends, only compensated for impairments in concentrating and persisting, and was not an adequate compensation for an impairment in pace. See id. at 7. Plaintiff adds that the ALJ provided no explanation for why she did not include limits on pace. Id.

In response, the Commissioner argues that the ALJ's finding of moderate impairment in CPP does not mean that she found a moderate impairment in concentrating, persisting, and maintaining pace as individual components. Def.'s Opp'n (ECF No. 15, at 15). Instead, the Commissioner contends, the ALJ can find Plaintiff moderately limited in CPP but "not assign a

pace limitation in the RFC" so long as she explains why Plaintiff's "moderate limitation does not translate into an RFC limitation." Id. at 18. The Commissioner then argues that the ALJ provided an adequate explanation. Id. For the reasons explained below, I agree with the Commissioner.

The ALJ's finding of moderate limitations in CPP does not mean that she found Plaintiff was moderately limited in concentrating, persisting, and maintaining pace. The ALJ's finding merely means that Plaintiff was moderately limited in at least one of these components: concentrating, persisting, or maintaining pace. See Lockett v. Saul, 834 F. App'x 236, 239 (7th Cir. 2020) ("A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in at least one of those areas, not necessarily all three."); 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(3)(f) ("We will document the rating of limitation of the whole area of mental functioning, not each individual part. . . . [f]or example . . . if you have marked limitation in maintaining pace, and mild or moderate limitations in concentrating and persisting, we will find that you have marked limitation in the whole paragraph B3 area of mental functioning."). Here, the ALJ's discussion makes clear that the moderate limitation was not based on pace, as she found that the medical opinions supporting a limitation in pace were unpersuasive. (R. 29-30). The ALJ is permitted—indeed required—to conduct such a review of the evidence. See Sandra M. M. v. Saul, No. 3:19-cv-912, 2021 WL 1164386, *13 (E.D. Va. March 26, 2021) ("The ALJ's residual function capacity determination must account for all credibly established limitations.") (emphasis added).

However, even if Plaintiff correctly contends that the ALJ did not provide adequate limitations in the RFC for CPP, the Fourth Circuit has "not impose[d] a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a

13

specific limitation in the RFC." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020). The ALJ need only "explain why a claimant's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC." Id. (cleaned up). Here, the ALJ discussed the basis for the RFC in detail.

While the ALJ considered the Wilson Center's opinions that Plaintiff was easily distracted, his attention to detail needed improvement, he had good work energy and good work tolerance, and that he should be accommodated by clear instructions, the ALJ found those opinions only partially persuasive, as "they [were] based on a one-time snapshot examination of the claimant immediately following a psychiatric hospitalization and prior to the claimant consistently attending treatment by way of therapy and medication, which resulted in improvement." (R. 30). The ALJ repeated Dr. Rhoad's opinion that Plaintiff could perform "some level of repetitive and simple work assignments" but not "some degree of moderately detailed tasks." (R. 28). The ALJ was not persuaded by Dr. Rhoad's opinion that Plaintiff could perform "some tasks without a significant degree of extra assistance and supervision" because the opinion was "not defined in vocational terms and [was] vague." (R. 29).

The ALJ found the opinions of Dr. Luck and Dr. Saxby that Plaintiff "could perform simple routine tasks" to be persuasive, as they were supported by the mental status examination findings that Plaintiff had "intact attention and concentration" and by the Plaintiff's own testimony that he engaged in a variety of activities, including:

> fishing, drawing, working on his computer, and playing videogames[,] as well as making YouTube videos[,] . . . taking care of his personal needs albeit with some reminders, preparing meals on a daily basis, helping to take care of his pets, mowing the lawn, doing household chores such as the dishes, [and] using public transportation . . . .

(R. 28-29). Because of Plaintiff's participation in those activities, which involve multiple steps, the ALJ was not persuaded by "Dr. Luck's and Dr. Saxby's indications that the claimant is capable of performing one to two step-tasks" insofar as those opinions were meant to be a limitation. (R. 30). The testimony of Plaintiff's father that Plaintiff suffers from "lack of focus [and] lack of ability to multi-task" and that medication has not improved his condition only partially persuaded the ALJ, as Plaintiff's father "is not medically trained to make exacting observations" and "cannot be considered a disinterested third party witness." (R. 31). Factoring the above considerations, the ALJ limited Plaintiff to unskilled, simple, routine, repetitive work in the RFC. (R. 30). She also included detailed limits on interactions with coworkers and the public, as well as limits on required reading for comprehension. Id.

Though the ALJ found Plaintiff moderately limited in CPP, she rejected those portions of Plaintiff's medical examinations that found him specifically limited in pace. (R. 29-30). The ALJ found Dr. Rhoad's opinion that Plaintiff had moderate difficulty "completing tasks throughout a typical work day and work week" unpersuasive, as the ALJ found it inconsistent with the "evidence of record given the mental status examination findings, which indicate[d] [Plaintiff] had improved . . . as he consistently attended therapy and maintained his medications." (R. 29). The ALJ was similarly unpersuaded by Dr. Saxby's opinion that Plaintiff was moderately limited in his "ability to complete a normal workday and workweek without interruptions . . . and to perform at a consistent pace without an unreasonable number and length of rest periods" due to Plaintiff's testimony that he engaged in multi-step activities and due to "the totality of the evidence as a whole." (R. 30). This explanation shows that the ALJ did not find Plaintiff specifically limited in pace, and it sufficiently details the basis for her decision, enabling judicial review.

15

Plaintiff cites a significant number of cases where the court found for other plaintiffs against the Commissioner. See Pl.'s Br. (ECF No. 13, at 7-9). Without addressing them all, this Report concludes that they are distinguishable. The inquiry, after all, is case-by-case. Shinaberry, 952 F.3d at 121. The court in Mascio v. Colvin granted remand "because the ALJ [t]here gave no explanation" for ignoring the plaintiff's moderate limitation in CPP. 780 F.3d 632, 633, 638 (4th Cir. 2015). This court likewise found that the ALJ's explanation was inadequate in Courtney L. v. Saul because the ALJ recognized ongoing issues in CPP (including pace) but instead based his conclusions on a few positive observations pulled from examinations. No. 2:20-cv-174, 2021 WL 2046712, at *10 (E.D. Va. May 5, 2021). Here, the ALJ did not find Plaintiff specifically limited in pace, nor did she fail to address the evidence unfavorable to her decision. See (R. 22-31). Instead, she weighed the evidence before her, explained why she found certain evidence unpersuasive, and then tailored the RFC to the evidence that was persuasive. (R. 29-31). Her explanation of the basis for the RFC is sufficient to permit judicial review. See Owens v. Kijakazi, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023). And that review confirms substantial evidence supports her RFC finding.

## V. **Recommendation**

For the foregoing reasons, the undersigned recommends that the court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 12), and GRANT the Commissioner's request (ECF No. 15) to AFFIRM the final decision of the Commissioner.[4]

---

[4] Per the new Supplemental Rules for Social Security, parties to Social Security actions need only submit briefs to present the action for decision. Supp. R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5; see also Order (ECF No. 11). Neither party needed to submit a motion for summary judgment, but as the Plaintiff's pleadings requested summary judgment, they are addressed as filed.

## VI. Review Procedure

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 14, 2023

17